

SIGNED this 25th day of January, 2024

/s/ Nicholas W. Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Darin Lebron Kelley** | ) | **No. 1:22-bk-10755-NWW** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| **Jerrold D. Farinash, Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Adv. No. 1:23-ap-01004-NWW** |
| | ) | |
| **Darin L. Kelley & Crystal S. Kelley,** | ) | |
| **as trustees of the Kelley** | ) | |
| **Family Irrevocable Trust** | ) | |
| | ) | |
| **Defendants** | ) | |

**M E M O R A N D U M**

In the complaint initiating this adversary proceeding the chapter 7 trustee seeks to avoid as constructively fraudulent a prepetition transfer of the debtor's interest in real property to an irrevocable trust established in connection with a divorce proceeding. The co-trustees of the trust, the debtor and his ex-wife, deny that the transfer is avoidable. Jurisdiction is proper in this court. 28 U.S.C. § 1334(b). This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(H).

Currently before the court are cross-motions for summary judgment, one seeking partial summary judgment filed by the chapter 7 trustee on October 24, 2023, and one filed by defendant Darin Kelley, as co-trustee of the Kelley Family Irrevocable Trust,[1] on November 17, 2023. Resolution of these summary judgment motions requires the court to answer two legal questions:

1) Whether the filing of a proof of claim by a creditor is required to qualify as a triggering creditor into whose shoes a trustee may step to avoid a transfer as constructively fraudulent under applicable state law, and

2) Whether a transfer made pursuant to a noncollusive divorce decree entered by a state court is immune from avoidance as constructively fraudulent.

The answer to each question is no.

---

[1] Because the defendants were sued in their fiduciary capacities as trustees and not as individuals, the court will refer to them as defendants when meaning their trustee positions and as the Kelleys when meaning their individual capacities.

Having considered the motions, supporting briefs, and statements of undisputed material facts and responses,[2] the court will grant the plaintiff's motion for partial summary judgment and will deny the defendant's motion.

## I. Statement of Facts

The Kelleys' marriage was dissolved by entry of a Consent Final Decree of Divorce by the Superior Court of Walker County, Georgia, on August 20, 2019. In connection with their divorce, the Kelleys divided their assets and joint liabilities.

Crystal Kelley received the marital residence in exchange for assuming responsibility for the joint mortgage indebtedness and paying Darin Kelley $5,000.00. She also retained a vehicle in exchange for assuming responsibility for the joint debt secured by that vehicle. Darin Kelley retained a separate vehicle in exchange for agreeing to be primarily liable for the joint debt secured by that vehicle. The Kelleys then divided the remainder of their personal property.

In addition to the above divisions, Darin Kelley assumed responsibility for approximately $22,000.00 of unsecured indebtedness owed jointly by the Kelleys to Synovus Bank. Crystal Kelley assumed responsibility for two other joint debts totaling approximately $13,500.00.

Finally—and this is the crux of this adversary proceeding—the Kelleys had to decide what to do with roughly forty-six acres of land located in Walker County, Georgia, adjacent to the marital residence ("Real Property"). Under the consent decree, neither of

---

[2] Defendant Crystal Kelley, as co-trustee of the Kelley Family Irrevocable Trust, although having filed an answer to the complaint separate from the answer filed by her co-trustee, Darin L. Kelley, did not respond to the plaintiff's motion for partial summary judgment.

the divorcing spouses received the Real Property. Instead, the Kelleys agreed to "convey the title to the [Real Property] to the parties as co-trustees of an irrevocable trust established for the benefit of their two children."

On September 24, 2019, the Kelleys executed the Kelley Family Irrevocable Trust Agreement. The trust's purpose was to hold title to the Real Property for the benefit of the Kelleys' children. That same day the Kelleys executed a quitclaim deed transferring the Real Property to themselves as co-trustees of the family trust. The Real Property was unencumbered at the time of that transfer.

Slightly more than two-and-a-half years later, on April 8, 2022, Darin Kelley filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code. The plaintiff is the duly appointed chapter 7 trustee in that bankruptcy case.

## II.     Procedural History

On March 30, 2023, the chapter 7 trustee commenced this adversary proceeding by filing a complaint against the defendants seeking to avoid the transfer of the debtor's interest in the Real Property as constructively fraudulent pursuant to 11 U.S.C. § 544(b) and GA. CODE ANN. § 18-2-75. Specifically, the plaintiff asserts that:

1) the debtor did not receive reasonably equivalent value in exchange for the transfer, and

2) the debtor was insolvent at the time of the transfer.

In addition to avoidance of the transfer, the plaintiff seeks authority to sell the bankruptcy estate's interest in the jointly owned Real Property pursuant to 11 U.S.C. § 363(h). The plaintiff is not otherwise seeking to avoid the division of the remaining marital property by the Kelleys.

4

### III. Summary Judgment Standard

A party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056. When deciding a motion for summary judgment, the court construes all reasonable inferences in favor of the nonmoving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the evidence would permit a reasonable jury to return a verdict for the nonmoving party, a genuine issue of material fact exists, and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the face of a summary judgment motion, the nonmoving party may not rest on its pleadings, but must come forward with some probative evidence to support its claim. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (holding that a nonmoving party must present "some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."). In the words of Federal Rule of Civil Procedure 56(c)(1), "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

IV.   **Analysis**

Under Section 544(b) of the Bankruptcy Code, a trustee may avoid a transfer of property that is avoidable under applicable nonbankruptcy law by a creditor who has an allowable unsecured claim. That section enables the trustee to step into the shoes of a creditor to pursue avoidance actions on behalf of the bankruptcy estate. *Watts v. MTC Dev., LLC (In re Palisades at W. Paces Imaging Ctr., LLC)*, 501 B.R. 896, 907 (Bankr. N.D. Ga. 2013).

In the complaint, the plaintiff identifies Synovus Bank as the creditor with an unsecured claim that may avoid the debtor's transfer of the Real Property pursuant to Georgia's Uniform Voidable Transactions Act. GA. CODE ANN. §§ 18-2-70 *et. seq*. ("UVTA"). Specifically, the plaintiff points to Section 18-2-75(a) of the UVTA providing that a transfer may be avoided as constructively fraudulent if three conditions exist:

1)   the creditor seeking to avoid the transfer held a claim that existed before the transfer was made;

2)   the debtor did not receive reasonably equivalent value in exchange for the transfer; and

3)   the debtor was insolvent or became insolvent because of the transfer.

The plaintiff maintains that there is no genuine dispute regarding whether the debtor's transfer to the trust for the benefit of the children was a gift unsupported by any exchange of value. Of course, the defendant argues that a genuine factual dispute exists regarding that element of the plaintiff's avoidance action. The defendant also suggests that because the transfer was consummated pursuant to a divorce decree

entered by a Georgia state court, the plaintiff may not avoid the transfer as constructively fraudulent.

In his motion for summary judgment, the defendant challenges the plaintiff's standing to pursue this fraudulent transfer action. He relies on the fact that the joint debt held by Synovus Bank prior to the transfer of the Real Property was refinanced after the transfer of the Real Property to remove the debtor's former spouse from the loan. The defendant asserts that such refinancing extinguished the prior joint debt of the Kelleys leaving the chapter 7 trustee with no creditor into whose shoes he may step to avoid the transfer under the UVTA.

To decide the pending motions, the court must determine whether there are genuine issues of material fact relating to the following issues:

A)  Whether the plaintiff has standing to pursue this action under 11 U.S.C. § 544(b);

B)  Whether the debtor received reasonably equivalent value in exchange for the transfer to the trust of his interest in the Real Property; and

C)  Assuming that the transfer is otherwise avoidable as constructively fraudulent, whether the transfer is immune from avoidance because it was made pursuant to a divorce decree entered by a state court.

Those issues are addressed in turn below.

### A. The plaintiff has standing to sue under 11 U.S.C. § 544(b).

No party disputes that at the time the Real Property was transferred to the trust the debtor and his former spouse were indebted to Synovus Bank pursuant to a line of credit. In connection with the Kelleys' divorce, the debtor agreed to assume primary

7

responsibility for that debt. After the transfer of the Real Property, the debtor and his father executed a new promissory note as makers in the principal amount of $20,225.00 payable to Synovus Bank. The principal amount of the loan was used to satisfy the Kelleys' joint debt owed to Synovus Bank, and the debtor and/or the co-maker also received an additional $3,440.61. The former spouse was not a party to the new note.

In the debtor's bankruptcy case, Synovus Bank filed Proof of Claim 3-1 in the amount of $17,804.17. The bank's claim is predicated on the new note, which is attached to the proof of claim. The defendant argues that the execution of the new note worked a novation that satisfied and extinguished the Kelleys' joint liability under the prior line of credit.

Georgia law regarding novation is clear. "In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new one." *Wooden v. Synovus Bank*, 748 S.E.2d 275, 276 (Ga. Ct. App. 2013).

No one disputes that the debtor and his former spouse were obligated under the line of credit that was outstanding prior to the transfer of the Real Property. Likewise, there is no dispute that the execution of the new note by the debtor and his father formed a new contract. The proceeds of the new note satisfied the joint indebtedness evidenced by the prior line of credit. However, the new note did not simply refinance the line of credit. The new note did not include Crystal Kelley as an obligor. Instead, the debtor's father became the debtor's joint obligor. Further, the debtor and/or his father received additional loan proceeds with the delivery of the new note.

8

Certainly Synovus Bank could not recover the unpaid debt evidenced by the new note from the debtor's ex-wife. She did not execute that note. Presumably when extending the credit evidenced by the new note, Synovus Bank relied solely on the credit worthiness of the debtor and his father and not that of Crystal Kelley. There is no genuine factual dispute that the new note is a new contract that extinguished and replaced the prior line of credit the bank had established for the Kelleys. Because the bank's claim as of the petition date evidenced by the new note did not exist before the transfer of the Real Property, Synovus Bank may not avoid the transfer under Section 18-2-75 of the UVTA. Accordingly, Synovus Bank may not serve as the triggering creditor for the plaintiff's avoidance action under 11 U.S.C. § 544(b).

The plaintiff identifies another potential triggering creditor. The plaintiff references the debtor's Schedule E/F, filed with the bankruptcy petition and signed by the debtor. In that schedule the debtor lists a nonpriority unsecured debt owed to Bass Pro Shops in the amount of $3,619.00 that was incurred in May 2019, prior to the transfer of the Real Property at issue. The debtor did not schedule that debt as disputed, unmatured, or contingent. The plaintiff argues that because Bass Pro Shops's claim existed both before the transfer of the Real Property and on the bankruptcy petition date, then he may step into the shoes of that creditor to avoid the transfer as constructively fraudulent under the above quoted provision of the UVTA.

The defendant does not dispute that the debtor's indebtedness to Bass Pro Shops existed before the transfer of the Real Property and that it remained outstanding as of the petition date. Instead, the defendant asserts that Bass Pro Shops is not "a creditor holding an unsecured claim that is allowable under section 502" as required by

9

Section 544(b) because it did not file a proof of claim and the deadline to do so has passed. In other words, the defendant maintains that the filing of a proof of claim is a predicate to qualifying as a triggering creditor under Section 544(b).

The defendant's position is not without support. *See, e.g.*, *Levey v. Gillman (In re Republic Windows & Doors LLC)*, No. 10-2513, 2011 WL 5975256 (Bankr. N.D. Ill. Oct. 17, 2011). In that case, a chapter 7 trustee was pursuing the named defendants for a variety of purported misdeeds. The defendants asserted that the trustee could not, utilizing Section 544(b), step into the shoes of the Internal Revenue Service and take advantage of a generous limitations period available to the IRS because the IRS had not filed a proof of claim. *Id.* at *9. The bankruptcy court agreed relying on two Seventh Circuit decisions. *Id.* at *10 (*In re Leonard*, 125 F.3d 543, 544 (7th Cir. 1997); *Image Worldwide, Ltd. v. Parkway Bank & Trust (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 576 (7th Cir. 1998)). However, in neither of those Seventh Circuit decisions was the Seventh Circuit called upon to determine whether the filing of a proof of claim by the identified creditor is a condition for qualification as a triggering creditor under Section 544(b).

For several reasons a majority of courts have recognized that the failure to file a proof of claim does not disqualify a creditor from being the triggering creditor under Section 544(b). *Whittaker v. Groves Venture, LLC (In re Bolon)*, 538 B.R. 391, 404 n.8 (Bankr. S.D. Ohio 2015) (collecting cases); *see also* 5 COLLIER ON BANKRUPTCY § 544.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. Supp. 2023).

First, the use of the terms "allowed" and "allowable" in Sections 502(a) and 544(b) of the Bankruptcy Code, respectively, supports this conclusion.

> [A]llowed and allowable do not have the same meaning and a creditor might fail to have an allowed claim for reasons that have nothing to do with whether it was owed money by the debtor, *see* 11 U.S.C. § 502(b)(1)–(9), (d), including the failure to file [a proof of claim]. When Congress wanted rights to turn on whether a claim had actually been "allowed" it said so, *see e.g.,* 11 U.S.C. §§ 506(a), 1325(a)(4), (5), (b)(1), and it did not [use] that term in § 544(b). In order to proceed under § 544(b)(1) the trustee only needs to identify a creditor holding an allowable claim—a creditor that is owed money as of the date of the petition—not one whose claim has actually been allowed.

*Finkel v. Polichuk (In re Polichuk)*, 506 B.R. 405, 430–31 (Bankr. E.D. Penn. 2014) (quoting *In re Crown Unlimited Mach., Inc.*, No. 03-13400, 2005 Bankr. LEXIS 3073, at *3 n.2 (Bankr. N.D. Ind. Nov. 4, 2005)).

Second, if a chapter 7 trustee's ability to invoke Section 544(b) were dependant upon the filing of a proof of claim by the triggering creditor, then the ability of the trustee to recover assets for the benefit of all creditors could be subverted by the recipient of an otherwise avoidable transfer. *See, e.g.*, *Stalnaker v. DLC, Ltd. (In re DLC, Ltd.)*, 295 B.R. 593, 604–05 (B.A.P. 8th Cir. 2003). By way of illustration, assume Bass Pro Shops actually filed an unsecured claim. There would be no dispute that Bass Pro Shops qualifies as a triggering creditor under Section 544(b). However, further assume that

after the petition date the defendants satisfied or took an assignment of Bass Pro Shops's proof of claim and the claim were withdrawn. If the existence of a filed proof of claim is a condition to the exercise by the chapter 7 trustee of his avoidance power under Section 544(b), the withdrawal of the proof of claim would extinguish that power. "It is inconsistent with the Bankruptcy Code to allow a transferee of a fraudulent transfer to defeat the bankruptcy trustee by paying [a creditor]. The potential for abuse is obvious." *Id*. at 605.

Third, a creditor's failure to file a proof of claim does not disrupt that creditor's standing to participate in the bankruptcy case for all purposes. The allowance of a proof of claim affects a creditor's voting rights and right to participate in any bankruptcy distribution but does not extinguish a creditor's status as a creditor. *In re Polichuk*, 506 B.R. at 431. The term "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief." 11 U.S.C. § 101(10)(A). The term "claim," in turn, is defined as a "right to payment." *Id.* § 101(5)(A). To qualify as a "creditor" as defined by the Bankruptcy Code, the entity need not file a proof claim. Therefore, without filing a proof of claim a "creditor" may nevertheless

    A)    request that the bankruptcy court determine that its debt is excepted from discharge, 11 U.S.C. § 523(c);

    B)    object to the granting of a discharge, 11 U.S.C. § 727(c); and

    C)    seek to revoke a debtor's discharge, 11 U.S.C § 727(d).

*See Solomon v. Barman (In re Barman)*, 244 B.R. 896, 899 n.3 (Bankr. E.D. Mich. 2000). Additionally, without filing a proof of claim a creditor is a "party in interest" with standing to seek dismissal of a bankruptcy case. *G6 Hospitality Franchising LLC v.*

12

*Zaver (In re Zaver)*, 520 B.R. 159, 164–65 (Bankr. M.D. Pa. 2014). Similarly, the mere failure of Bass Pro Shops to file a proof of claim does not affect its status as a "creditor" into whose shoes the chapter 7 trustee may step under Section 544(b) of the Bankruptcy Code.

Finally, if the court were inclined to hold that a proof of claim is required to have an "allowable" claim under Section 544(b), the facts that Bass Pro Shops has not filed a proof of claim and the deadline to do so has passed may not prevent it from having an allowable claim in the future. Pursuant to 11 U.S.C. § 726(a)(3) a creditor may file a tardy claim that is deemed allowed for distribution purposes if timely filed claims have been fully paid. The mere possibility that Bass Pro Shops could yet file a proof of claim that is allowed for distribution purposes makes it impossible to presently conclude that it will never have an allowed claim. Given that uncertainty, dismissing the plaintiff's complaint now may lead to an unjust outcome.

For example, assume the court agreed with the defendant, granted the defendant's motion, and dismissed this adversary proceeding. Pursuant to Federal Rule of Civil Procedure 41(b), as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7041, such dismissal would constitute an adjudication on the merits. Further assume that subsequently Bass Pro Shops files a tardy claim that becomes allowable under Section 726(a)(3). In that situation the trustee would be left with no ability to pursue the avoidance of the transfer of the Real Property. That would be an unjust outcome that is inconsistent with both the letter and purpose of Section 544(b).

The plaintiff in this case, relying on the debtor's admission in the schedules, has identified a creditor that qualifies as a triggering creditor for an avoidance action under Section 544(b). Consequently, the defendant's motion for summary judgment challenging the plaintiff's standing to bring this action must be denied.

### B. The debtor did not receive reasonably equivalent value in exchange for transferring the Real Property.

A transfer may be avoided as constructively fraudulent under Section 18-2-75(a) of the UVTA only if the trustee establishes that the debtor did not receive "reasonably equivalent value in exchange for the transfer." "The purpose of voiding transfers unsupported by 'reasonably equivalent value' is to protect creditors against the depletion of a bankrupt's estate." *Senior Transeastern Lenders v. Off. Comm. of Unsecured Creditors (In re TOUSA, Inc.)*, 680 F.3d 1298, 1311 (11th Cir. 2012) (citation omitted); *Walker v. Treadwell (In re Treadwell)*, 699 F.2d 1050, 1051 (11th Cir. 1983) (citation omitted) ("[T]he object of [the Bankruptcy Code's fraudulent conveyance provision] is to prevent the debtor from depleting the resources available to creditors through gratuitous transfers of the debtor's property.").

Whether a debtor received reasonably equivalent value requires application of a three-part test: "1) whether the debtor received value; 2) whether the value received was in exchange for the property transferred; and 3) whether the value was reasonably equivalent to the value of the property transferred." *Mann v. Brown (In re Knight)*, 473 B.R. 847, 850 (Bankr. N.D. Ga. 2012) (citation omitted). Consideration of only the first two parts of that test is determinative in this case.

A debtor receives value if "property is transferred, or an antecedent debt is secured or satisfied." GA. CODE. ANN. § 18-2-73(a). The defendant points to the fact that, under the consent divorce decree, the debtor received various items of marital personal property and $5,000.00 cash. He also notes that his ex-wife assumed responsibility to satisfy certain antecedent debts, including debts secured by properties she was awarded by the divorce decree. That consideration would constitute "value" as defined by the UVTA. However, the value received by the debtor was in exchange for the debtor's transfer of his interest in marital property to his ex-wife.

The Real Property was transferred to the trust for the benefit of the Kelleys' children. The defendant has not identified any value given "in exchange for" the transfer of the Real Property to the children. The consent divorce decree does not reference any property received or any antecedent debt secured or satisfied in exchange for that transfer. The Kelleys' children certainly would not have received any portion of their parents' property had the state court been called upon to make an equitable division of the marital assets in a fully contested divorce proceeding. *Payson v. Payson*, 553 S.E.2d 839, 841 (2001) (emphasis added) (citation omitted) ("The equitable division of property is an allocation *to the parties* of the assets acquired during the marriage, based on the parties' respective equitable interests."). The fact that the transfer of the Real Property was consummated pursuant to a consensual divorce decree does not change the obvious fact that it was nothing more than a gratuitous transfer by the Kelleys solely for the benefit of their children.

A gift, even a gift to one's children, may be subject to avoidance by a trustee. *See, e.g.*, *In re Treadwell*, 699 F.2d at 1051. The transfer of the Real Property depleted the assets of both the debtor and his former spouse, and neither received any value in exchange to restore their respective estates. The defendant has pointed to nothing in the record and has proffered no evidence in the form of affidavits, deposition transcripts, or otherwise to suggest to the contrary.

Nothing in the record explains why the Kelleys chose to transfer the Real Property to a trust for the benefit of their children rather than divide the Real Property among themselves . Perhaps it was simply for the love and affection of their children. Even assuming the Kelleys transferred the Real Property for that laudable purpose and with no actual intent to hinder, delay, or defraud creditors, the court's ruling would remain the same. *See Tuggle v. Ameris Bank*, 872 S.E.2d 1, 5–6 (Ga. Ct. App. 2022) (holding that love and affection does not constitute reasonably equivalent value). Because the transfer of the Real Property without value depleted assets available to creditors (assuming the plaintiff can satisfy his burden of proof respecting the remaining elements prescribed by Section 18-2-75(a) of the UVTA), the transfer is avoidable. There is no genuine issue of material fact regarding whether the debtor received value in exchange for his transfer of the Real Property. He did not.

### C. Transferring the Real Property pursuant to a divorce decree does not insulate it from avoidance as a constructively fraudulent transfer.

In his brief in support of summary judgment, the plaintiff anticipated that the defendant would rely on two cases: *Batlan v. Bledsoe (In re Bledsoe)*, 569 F.3d 1106

16

(9th Cir. 2009) and *Ingalls v. Erlewine (In re Erlewine)*, 349 F.3d 205 (5th Cir. 2003). Ultimately, the defendant relied only on *In re Erlewine*, but the court will discuss both cases.

In *Erlewine*, a husband and wife divorced before the wife filed a bankruptcy petition. A Texas state court presiding over the divorce proceeding deliberately made an unequal division of the marital property that favored the husband because the wife had significantly wasted marital assets and had taken unreasonable legal positions in the divorce that increased the husband's attorney fees. *Erlewine*, 349 F.3d at 207–08. In bankruptcy, the trustee sought to avoid the Texas court's award of property pursuant to 11 U.S.C. § 548 on the ground that it was uneven and amounted to a transfer for less than reasonably equivalent value.

The husband challenged the trustee's avoidance action, and the bankruptcy court, district court, and Fifth Circuit agreed with the husband. *Id.* at 207. The Fifth Circuit easily concluded that the divorce decree was not to be given a preclusive effect under doctrines of res judicata and collateral estoppel because the trustee was not a party to the divorce proceedings nor in privity with a party. *Id.* at 209–11 (collecting cases).

The Fifth Circuit then turned to whether the bankruptcy court erred in finding that the debtor received reasonably equivalent value as a matter of law. The Fifth Circuit found answering that question difficult because, while there was a clear uneven division of marital property, finding a lack of reasonably equivalent value implicated unwinding a state court judgment in an area in which states have an important interest—divorce. *See*

17

*id.* at 212. The Fifth Circuit rejected the trustee's position that reasonable equivalence is a purely economic test, noting that the Texas state court had found specific reasons to divide property as it did. *Id.*

Without clear intent from Congress, the Fifth Circuit was unwilling "to upset the finality of judgments in an area as central to state law as divorce decrees." *Id.* However, concerned that the decision could be construed to always prevent a bankruptcy trustee from seeking to avoid a transfer made pursuant to a divorce decree, the Fifth Circuit noted that "the divorce before us—which was fully litigated, without any suggestion of collusion, sandbagging, or indeed any irregularity—should not be unwound by the federal courts merely because of its unequal division of marital property." *Id.* at 212–13. Relying on that final quote, the defendant suggests that because the plaintiff has not alleged any collusion, sandbagging, or other irregularity relating to the Kelleys' divorce, as a matter of law the court should find that the debtor received reasonably equivalent value for the transfer.

To the extent the court may find the reasoning of *Erlewine* persuasive, it is factually distinguishable from the current case. For one, the division of property pursuant to the Kelleys' divorce decree was consensual and was not fully litigated, whereas in *Erlewine*, the divorce was contested and fully litigated. *Id.* at 207. For another, the plaintiff in this adversary proceeding is not seeking to avoid a transfer made pursuant to a divorce decree solely because one spouse received more than the other. Instead, he is seeking to avoid a transfer made jointly by the divorcing parties to a third party, the family trust established for the sole benefit of the Kelleys' children.

18

In *Bledsoe*, a husband and wife divorced before the wife filed for bankruptcy. *Batlan v. Bledsoe (In re Bledsoe)*, 569 F.3d 1106, 1108 (9th Cir. 2009). During the divorce proceeding, an Oregon state court found numerous procedural shortcomings by the wife (despite being represented by multiple attorneys) to the point that it found her unwilling to participate. The court struck her notice of appearance in the case and issued a default judgment for the husband that contained a division of property that favored the husband significantly.

The bankruptcy trustee sought to avoid the transfers as constructively fraudulent under 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B). The bankruptcy court, district court, and Ninth Circuit all sided with the husband. Holding that the transfers were unavoidable as constructively fraudulent, the Ninth Circuit noted that a property division resulting from "a *regularly conducted, contested* divorce proceeding conclusively establishes 'reasonably equivalent value' under 11 U.S.C. § 548(a)(1)(B) in the absence of fraud, collusion, or violation of state law." *Id.* at 1108 (emphasis added).

As with *Erlewine*, assuming the court otherwise found the reasoning in *Bledsoe* persuasive, the holding in that case does not apply in this case. The Kelleys' divorce was neither regularly conducted nor contested. The Kelleys' division of property was consensual. Further, as stated above, had the division of property been effected through a regularly conducted divorce, the Georgia state court would have equitably divided the marital property between the Kelleys. The equitable title to the Real Property would not have been awarded to the Kelleys' children.

Most importantly, those decisions are contrary to Georgia law. Under Georgia law a property division consummated through even a fully contested divorce proceeding is not insulated from avoidance as constructively fraudulent by a creditor because the creditor was not party to or in privity with a party to the divorce proceeding. *See Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1146–47 (11th Cir. 2019); *Enlow v. Enlow*, 836 S.E.2d 128 (Ga. Ct. App. 2019); *see also Corzin v. Fordu (In re Fordu)*, 201 F.3d 693 (6th Cir. 1999) (holding under Ohio law that a divorce decree did not have claims preclusive effect in an adversary proceeding to avoid transfers made by a debtor to his former spouse).

### V.    Conclusion

For the foregoing reasons, the court finds that there is no genuine issue of material fact and that as a matter of law the plaintiff: (1) has satisfied his burden of proof of establishing that the debtor did not receive reasonably equivalent value in exchange for the transfer of his interest in the Real Property; and (2) has standing to pursue this avoidance action under Section 544(b) of the Bankruptcy Code. By separate order the court will grant the plaintiff's motion for partial summary judgment and will deny the defendant's motion for summary judgment.

###